# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RODNEY ALLAN KING,

    Defendant.

No. CR05-4016-DEO

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**

_____

    This matter is before the court on motion of the defendant Rodney Allen King to suppress his confession. (Doc. No. 40) The plaintiff (the "Government" resists the motion. (Doc. No. 42) The court held a hearing on the motion on July 1, 2005, at which Assistant U.S. Attorney Forde Fairchild appeared on behalf of the Government, and the defendant appeared in person with his attorney, Robert Tiefenthaler. The Government offered the testimony of Task Force Officer Carl Ragar. The Court admitted into evidence Gov't Ex. 1 - the Government's transcription of King's interview with officers on December 21, 2004 (attached to Doc. No. 42), and Gov't Ex. 2 - a video recording on DVD of the same interview (housed in Clerk's file).

    In his motion, King argues the statements he made to officers in the December 21, 2004, interview were not made voluntarily because (1) he was coerced by promises of leniency, and (2) he was under the influence of drugs at the time of the interview.

## BACKGROUND FACTS

The evidence indicates officers made a controlled buy of drugs from King on December 21, 2004. After the buy took place, King went back inside an apartment he had exited immediately before the drug deal, and King injected some methamphetamine. He came out of the apartment ten to fifteen minutes later and he was arrested immediately and taken directly to the Sioux City police station for questioning. Officer Ragar indicated that approximately twenty to thirty minutes had passed from the time King entered the apartment after the drug buy until the time officers began questioning King at the police station.

At the beginning of the interview, Officer Shawn Jensen made statements to King about how the federal system works. King told officers he had two prior drug felonies, and Officer Jensen made the following statements to King (Gov't Ex. 2, time index 19:51:10):[1]

> OFFICER JENSEN: And you know how the federal system works? Three strikes, you're out, in the federal system. And the only way -- that's a life sentence, thirty, thirty plus years. The only way you can come down off of that sentence in the federal system is through cooperation. And cooperation starts right here, right now, um, and we'll kind of get into that a little bit later, other ways that you can cooperate. But bottom line, you need to help yourself out right now. And we're gonna hit you with the -- the post-Miranda warning. Um, you can talk to us or not, that's -- it's up to you, and, you know, we'll – he'll kind of explain it to you in the formal form right there, but -- and I can't give you legal advice but based on my experience, you want to cooperate. With your criminal – your criminal history screws ya. Two ounces, two ounces out of the get-go, a normal – a normal deal, it's a five-year minimum mandatory. Um, long story short, with your criminal history, it triples it. But you had a -- you have some historical built in there and some other stuff that people are gonna talk

---

[1] The following is from the court's own transcription of Gov't Ex. 2, which the court finds to be more accurate than the transcription in Gov't Ex. 1.

> about you that can put dope on ya, you're – it's thirty years either way you look at it, you know. Then you can add, add or subtract park zones, and there's a park right up by there, you know, firearms, stuff like that. Obviously, we didn't find any firearms, not an issue, but that's just kinda how the federal system works. And bottom line, it works for us and you because we want to put somebody else in that seat tonight besides you, and you gotta be the person that puts them there. . . .

King argues Officer Jensen's statements constituted a promise of leniency if he cooperated and provided information to the officers, inducing him to make incriminating statements.

In addition, King argues he was under the influence of methamphetamine, rendering him mentally incapable of making a voluntary statement to the officers. King told the officers, during the interview, that he had injected a quantity of methamphetamine immediately before his arrest. He argues his mental faculties were impaired, rendering his statements involuntary.

## *ANALYSIS*

### *A. Impact of Officer Jensen's Statements*

Despite the inherently coercive nature of custodial interrogations, *see Dickerson*, 530 U.S. at 435, 120 S. Ct. at 2331, a suspect may waive the rights contained in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1628. However, "[a] waiver of *Miranda* rights is invalid if, in the totality of the circumstances, the accused's will was overborne." *United States v. Holloway*, 128 F.3d 1254 (8th Cir. 1997) (citing *United States v. Makes Room*, 49 F.3d 410, 414 (8th Cir. 1995)); *see United States v. Caldwell*, 954 F.2d 496, 505 (8th Cir. 1992) (waiver of *Miranda* rights is determined under totality of the circumstances and in light of the entire course of police conduct) (citing *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S. Ct. 1285, 1297, 84 L. Ed. 2d 222 (1985)). *See*

*also United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996); *United States v. Anderson*, 929 F. 2d 96, 99 (2d Cir. 1991).[2]

Furthermore, "[t]here is a strong presumption against waiver," and the Government has the burden to show a suspect "'knowingly and intelligently waived his privileges against self-incrimination and his right to retained or appointed counsel.'" *Soffar v. Johnson*, 237 F.3d 411, 454 (5th Cir. 2000) (quoting *Miranda*, 384 U.S. at 475, 86 S. Ct. at 1628). "Indeed, courts must "'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Id.* (citations omitted).

In *United States v. Boyd*, 180 F.3d 967 (8th Cir. 1999), the Eighth Circuit Court of Appeals explained how to determine whether a waiver of *Miranda* rights is valid:

> "The determination of whether an accused has knowingly and voluntarily waived his *Miranda* rights depends on all the facts of each particular case." *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir. 1985). The circumstances include "the background, experience, and conduct of the accused." *Id.*

---

[2] A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. *See Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S. Ct. 917, 920, 9 L. Ed. 2d 922 (1963). Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973); *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir.), *cert. denied*, 488 U.S. 945, 109 S. Ct. 374, 102 L. Ed. 2d 363 (1988); *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938) (to determine whether defendant made "an intentional relinquishment or abandonment of a known right or privilege" courts must examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused"). The prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his *Miranda* rights, and that his confession is truly the product of free choice. *See Colorado v. Connelly*, 479 U.S. 157, 168- 69, 107 S. Ct. 515, 522-23, 93 L. Ed. 2d 473 (1986).

> The government has the burden of proving that the defendant "voluntarily and knowingly" waived his rights. *Id.*

*Id.*, 180 F.3d at 977; *see also United States v. Barahona*, 990 F.2d 412, 418 (8th Cir. 1993) (government bears burden of proving by preponderance of evidence that defendant knowingly, voluntarily, and intelligently waived his rights).

An inquiry into whether a suspect's *Miranda* rights have been waived "has two distinct dimensions." *Moran*, 475 U.S. at 421, 106 S. Ct. at 1141 (citing *Edwards v. Arizona*, 451 U.S. at 482, 101 S. Ct. at 1883; *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424 (1977)). As the Court explained:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197 (1979). *See also North Carolina v. Butler*, 441 U.S. 369, 374-375, 99 S. Ct. 1755, 1758, 60 L. Ed. 2d 286 (1979).

*Moran*, 475 U.S. at 421, 106 S. Ct. at 1141; *see United States v. Jones*, 23 F.3d 1307 (8th Cir. 1994); *Caldwell*, 954 F.2d at 504. As the Court also held in *Moran*:

> Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran*, 475 U.S. at 421, 106 S. Ct. at 1141 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2571, 61 L. Ed. 2d 197 (1979)).

These principles were summarized by the Eighth Circuit Court of Appeals in *Holman v. Kemna*, 212 F.3d 413 (8th Cir. 2000), as follows:

> Inquiry into the validity of a waiver has two distinct dimensions -- whether the waiver is voluntary and whether it is knowing and intelligent. *See United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. *See id.* A waiver is knowing and intelligent if it has been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *See id.* The burden of proving that a defendant has knowingly and voluntarily waived his right to have counsel present at an interrogation rests with the government. *See United States v. Eagle Elk*, 711 F.2d 80, 82 (8th Cir. 1983).

*Id.*, 212 F.3d at 420.

With respect to allegations of police coercion in eliciting statements from a suspect, in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297 (1980), the Supreme Court held "coercion is determined from the perspective of the suspect." *See Illinois v. Perkins,* 496 U.S. 292, 296, 110 S. Ct. 2394, 2397, 110 L. Ed. 2d 243 (1990); *see also United States v. Huerth*, 239 F. 3d 865, 871 (7th Cir 2001) (coercion should be analyzed "from the perspective of a reasonable person in the position of the suspect*"); cf. Roberson, supra*, 486 U.S. at 687, 108 S. Ct. at 2101. Factors that should be considered in evaluating police coercion are the conduct of the law enforcement officials and the capacity of the suspect to resist the pressure to confess. *United States v. Johnson*, 47 F.3d 272, 276 (8th Cir. 1995). Other relevant factors are "the defendant's age, education, intelligence level, and mental State; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about

constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Huerth*, 239 F. 3d at 871.

In *United States v. Turner*, 157 F.3d 552 (8th Cir. 1998), the Eighth Circuit noted that finding a *Miranda* waiver to be invalid requires more than coercive police activity:

> It is true, as the government notes, that in [*Colorado v.*] *Connelly*, 479 U.S. [157,] 167, 107 S. Ct. 515, [522, 93 L. Ed. 2d 473 (1986)], the Supreme Court held "that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" However, later that term, in *Colorado v. Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987), the Supreme Court made clear that validity of a *Miranda* waiver has "'two distinct dimensions'" -- whether the waiver is voluntary and whether it is knowing and intelligent. *Id.* at 573, 107 S. Ct. 851 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)).

*Turner*, 157 F.3d at 555. Relying on *Connelly*, the court in *Turner* held police coercion is a necessary prerequisite to a determination that a waiver was involuntary, but not to the separate determination of whether the waiver was knowing and intelligent. *Id.* The requisite "coercion" may take the form of the accused being "'threatened, tricked, or cajoled into a waiver [which] will, of course, show that the defendant did not voluntarily waive his privilege [against self-incrimination.]'" *Soffar*, *supra*, 237 F.3d at 454 (quoting *Miranda*, 384 U.S. at 476, 86 S. Ct. at 1629).

The court must apply these principles to the facts of the present case to determine whether King knowingly, intelligently, and voluntarily waived his *Miranda* rights. Throughout this analysis, the court will keep in mind the "twin rationales [for suppressing evidence] – trustworthiness and deterrence," to see whether suppression of Juan's post-*Miranda* statements would serve the general goal of deterring unlawful police conduct and

the Fifth Amendment goal of assuring the receipt of trustworthy evidence. *See Anderson*, 929 F. 2d at 102 (citing *Elstad,* 470 U.S. at 308, 105 S. Ct. at 1292).

The question to be decided in the present case is whether, under the peculiar facts of this case, the Government has sustained its burden of proving that King gave up his right to remain silent "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1628. This determination must be made from the perspective of a reasonable person in King's position, and not from the perspective of the police. *See Rhode Island v. Innis, supra*, 446 U.S. at 301, 100 S. Ct. at 1689; *Huerth*, 239 F.3d at 871; *see also Moran*, 475 U.S. at 423, 106 S. Ct. at 1142 (state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights);[3] *Arizona v. Roberson, supra*, 486 U.S. at 687, 108 S. Ct. at 2101 (citing *Edwards*). The two dimensions of waiver are (1) whether the waiver was voluntary, and (2) whether the waiver was knowing and intelligent. *Holman*, 212 F.3d at 420. A waiver is "voluntary" if it is the product of "a free and deliberate choice rather than intimidation, coercion, or deception." *Id.*

The facts here contain no evidence of intimidation, deception, or coercion. The statements Officer Jensen made to King about how the federal system works were accurate. The court finds the officers made no promises to King that he would receive any specific leniency in exchange for his cooperation.

Furthermore, to the extent King relied on Officer Jensen's statement that it would be to King's advantage to cooperate, King can made an argument at sentencing that his

---

[3] In *Moran*, the Supreme Court held that "whether intentional or inadvertent, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights." *Id.* 475 U.S. at 423, 106 S. Ct. at 1142.

immediate cooperation warrants a reduced sentence. The argument here, however, does not warrant suppressing his statements to officers.

### B. *King's Mental Condition During Questioning*

King argues he was mentally impaired because he was under the influence of methamphetamine at the time of the interview. The court has reviewed the video of the interview and finds that to any reasonable person, King would have appeared to be coherent and lucid. He responded appropriately to the officers' questions, expressed himself clearly, and did not behave in any manner that would have indicated he was under the influence of drugs or otherwise was mentally impaired.

The Eighth Circuit Court of Appeals has held that impairment due to intoxication or fatigue "do[es] not automatically render a confession involuntary; rather, the test is whether these mental impairments caused the defendant's will to be overborne." *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990) (citing *United States v. Givens*, 712 F.2d 1298, 1302 (8th Cir. 1983); *United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976); *United States v. Petary*, 857 F.2d 458, 461 (8th Cir. 1988)); *accord United States v. DeWitt*, 2001 WL 34149270 at *4 (N.D. Iowa, Nov. 6, 2001) (Jarvey, M.J.)

The evidence here establishes King's will was not overborne.

### *CONCLUSION*

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to this Report and Recommendation as specified below, that King's motion to suppress his confession be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections **by no later than July 18, 2005**. Any response to the objections must be served and filed **by July 22, 2005**.

**IT IS SO ORDERED.**

**DATED** this 11th day of July, 2005.

*/s/ Paul A. Zoss*
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT